**BRIAN T. DUNN, ESQ. (SBN 176502)**
Email: bdunn@cochranfirm.com
**MEGAN R. GYONGYOS, ESQ. (SBN 285476)**
Email: mgyongyos@cochranfirm.com
**THE COCHRAN FIRM CALIFORNIA**
4929 Wilshire Boulevard, Suite 1010
Los Angeles, California 90010
Telephone: (323) 435-8205
Facsimile: (323) 282-5280
*Attorneys for Plaintiff William Mears*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

WILLIAMS MEARS, individually and as successor in interest to Michael Mears; and JOANNA WYSOCKI, individually and as successor in interest to Michael Mears,

Plaintiffs,

vs.

CITY OF LOS ANGELES, a municipality; STEVEN BEUMER, an individual; JOSE PEDROZA, an individual; JONATHAN GAN, an individual; OFFICER SEFFEL, an individual; OFFICER LEW, an individual; OFFICER GIST, an individual; SGT. WILIAMS, an individual; and DOES 8-10, inclusive,

Defendants.

**CASE NO.: CV 15-08441 JAK (AJWx)**
Consol. w/ CV 15-09586 JAK (AJWx)

[Assigned to the Hon. John A. Kronstadt, United States District Judge]

**PLAINTIFFS' NOTICE OF JOINT MOTION AND JOINT MOTION IN LIMINE NO. 4 OF 4 TO EXCLUDE CUMULATIVE EXPERT TESTIMONY; MEMORANDUM OF POINTS AND AUTHORITIES**

[Declaration of Brian T. Dunn and Exhibits 1-4 filed concurrently herewith]

**Hearing:**
Date: April 17, 2017
Time: 3:00 p.m.
Place: Courtroom 10B

**Trial:**
Date: May 2, 2017
Time: 9:00 a.m.
Place: Courtroom 10B

**TO THIS HONORABLE COURT, AND TO DEFENDANTS AND THEIR ATTORNEYS OF RECORD HEREIN:**

**PLEASE TAKE NOTICE** that on April 17, 2017, at 3:00 p.m. or as soon thereafter as this matter may be heard in Courtroom 10B of the United States District Court for the Central District of California, Plaintiffs WILLIAM MEARS and JOANNA WYSOCKI will and hereby do jointly move the Court in limine seeking to exclude unnecessarily cumulative testimony from Defendants' retained expert witnesses and for an order instructing Defendants and Defendants' counsel and requiring counsel to advise all witnesses:

1. Not to attempt to convey to the jury, directly or indirectly, any of the facts mentioned in this Motion without first obtaining permission of the Court outside the jury's presence and hearing;

2. Not to make known the fact that this Motion has been filed; and

3. To warn and caution each of Defendants' witnesses to strictly follow the same instructions.

Plaintiffs seek to limit the testimony of Defendants' retained expert witnesses and exclude cumulative expert testimony because the probative value of that testimony is substantially outweighed by the danger of unfair prejudice to Plaintiffs and the presentation of cumulative evidence at trial. This Motion is made on the grounds that the cumulative testimony of Defendants' retained experts is inadmissible under Fed. R. Evid. 403 and is based on this Notice, the attached Memorandum of Points and Authorities, the Declaration of Brian T. Dunn and Exhibits filed concurrently herewith, the file and records of the within action, and any such additional oral or documentary evidence as may be evaluated by the Court at the hearing of this matter.

///

///

**Statement of Local Rule 7-3 Compliance:** This Motion is made following the conference of counsel pursuant to Local Rule 7-3, during which no resolution could be reached.

DATED: April 3, 2017

Respectfully submitted,

**THE COCHRAN FIRM CALIFORNIA**

By: /s/ Brian T. Dunn
BRIAN T. DUNN
MEGAN R. GYONGYOS
Attorneys for Plaintiff WILLIAM MEARS

**MEMORANDUM OF POINTS AND AUTHORITIES**

**STATEMENT OF FACTS AND SUMMARY OF ISSUES TO BE DECIDED BY THE JURY AT TRIAL**

***Statement of Facts***

This case arises out of the use of force related death of Plaintiffs' decedent, Michael Mears. On the evening of December 24, 2014, paramedics responded to the apartment complex that decedent lived in after receiving a 911 call from security officers at the complex who stated that decedent was injured and in need of medical attention. The paramedics located decedent in the hallway on the third floor of the complex. Decedent was allegedly rolling around in pieces of broken glass on the floor of the hallway yelling incoherently, and was covered in his own blood. There were no reports that the decedent had committed any crime or that he had threatened or injured anyone. When the decedent did not respond to the paramedics' attempts to communicate with him, the paramedics requested backup from the Los Angeles Police Department.

Defendant Officer Steven Beumer and Defendant Officer Jose Pedroza responded to the paramedics' request for backup and were the first officers to arrive on scene. The officers did not have any information that decedent had committed a crime or was in possession of any weapons. They claim that the paramedics on scene informed them that decedent was having an adverse reaction to medication and acting erratically.

Officer Beumer and Officer Pedroza ran up to the third floor of the apartment complex and contacted paramedics at that location who allegedly told them that decedent needed to be transported to the hospital as soon as possible. Officer Beumer and Officer Pedroza observed decedent rolling around in pieces of broken glass and striking the walls of the hallway. Decedent was allegedly covered in his

own blood, and was yelling incoherently. Officer Beumer and Officer Pedroza told decedent to stop moving, lie on his stomach, and put his hands behind his back.

The decedent stopped moving and Officers Beumer and Pedroza claim that they approached the decedent from behind and without any warning to handcuff him. When the officers were allegedly one foot away from the decedent, the decedent purportedly again began moving around on the floor. Officer Beumer drew his baton and struck decedent twice in the knee area while yelling at decedent, who the officers claim continued to roll around on the ground and move his legs.

Next, Officer Beumer put his baton away, drew his pepper spray, and, although this was occurring in an enclosed hallway sprayed a 5-second burst of pepper spray into decedent's face. The officers then backed away from the decedent and requested backup, a supervisor, a Taser, and a beanbag shotgun. Defendant Officers Jonathan Gan, John Seffell, Jessicah Gist, Ken Lew, and Andrey Wilkins responded to Officer Beumer and Officer Pedroza's request for backup. According to the officers, decedent was still rolling around on the floor, striking the walls of the hallway, and yelling incoherently at this time.

When the officers were approximately five feet away from decedent, Officer Gan tased the decedent six times. The TASER delivered electrical charges to the decedent for a total of 53 seconds.

After he was tased six times, the decedent was lying face down on his stomach with his hands and arms underneath his chest, and Officers Beumer, Pedroza, Seffell, and Gist applied their cumulative body weight to hold the decedent down. Officer Beumer placed both of his knees on decedent's lower back and buttocks. Officer Pedroza placed his knee on decedent's mid-back. Officer Seffell applied his body weight to decedent's lower back. Officer Gist placed her hands and knees on decedent's legs. Officer Pedroza struck decedent twice in the shoulder blade with a closed fist. Approximately 40 seconds after decedent was

handcuffed, Officer Pedroza and Officer Gist applied a Hobble Restraint Device to decedent's ankles.

The decedent was transported to Ronald Reagan UCLA Medical Center at approximately 8:50 p.m. At approximately 6:30 a.m. on December 26, 2014, decedent passed away. The Los Angeles County Coroner's Office determined that the cause of decedent's death was ventricular dysrhthmia, due to or as a consequence of cardiac enlargement with biventricular hypertrophy and four chamber dilation. Cocaine intoxication and police restraint with the use of a Taser were found to be other conditions contributing but not related to the immediate cause of decedent's death.

Officer Gan tased the decedent six separate times during the incident. The first Taser activation lasted five (5) seconds. The second Taser activation lasted thirty-two (32) seconds. The third Taser activation lasted three (3) seconds. The fourth Taser activation lasted five (5) seconds. The fifth Taser activation lasted five (5) seconds. The sixth Taser activation lasted three (3) seconds. The overall combined activation time was fifty-three (53) seconds.

***The Issues to Be Decided By the Jury at Trial***

The issues to be decided by the jury at the trial of this matter include the following: (1) whether the individual Defendants unlawfully detained the decedent; (2) whether the individual Defendants used excessive or unreasonable force against the decedent; (3) whether the individual Defendants acted with a purpose to harm unrelated to a legitimate law enforcement objective or, if actual deliberation was practical, whether the individual Defendants acted with deliberate indifference; (4) whether the individual Defendants unlawfully denied medical care to the decedent; (5) whether the individual Defendants were negligent; (6) whether the individual Defendants were integral participants in and/or failed to intervene to prevent or stop the wrongful conduct of other Defendants; (7) whether Defendant City of Los

Angeles had a policy of failing to adequately train its police officers that caused the deprivation of the decedent's rights; (8) whether the wrongful conduct of the Defendants caused the decedent's death; (9) whether punitive damages should be awarded against one or more of the individual Defendants; and (10) the type and amount of damages to be awarded to the decedent and to Plaintiffs.

**SUBJECT OF MOTION**

This Motion seeks to exclude unnecessarily cumulative testimony of Defendants' retained medical experts, Theodore Chan, M.D., Richard Clark, M.D., Gary Vilke, M.D., and Charles Wetli, M.D. Defendants' medical experts propose to offer the following opinions at trial:

**A. Gary Vilke, M.D.**

Dr. Vilke is an emergency physician and professor of emergency medicine. Dr. Vilke is expected to testify that the use of the Taser, the use of pepper spray, and the restraining process did not cause or contribute to the decedent's death. (*See* Exhibit 1 to Declaration of Brian T. Dunn ["Dunn Decl."], Rule 26 Report of Gary Vilke, M.D. ["Vilke Rule 26 Report"], at pp. 1-2.) Dr. Vilke is also expected to testify that the cardiac arrest event that culminated in the decedent's death resulted from "Excited Delirium Syndrome" caused by the decedent's use of cocaine, his elevated potassium levels, and his underlying cardiac condition. (*See id.* at p. 3.) Dr. Vilke proposes to offer the following specific opinions in this regard:

1. The use of the Taser on the decedent did not cause or contribute to his cardiac arrest and death;

2. The restraint process, including the prone positioning of the decedent and application of body weight to the decedent's person, did not result in asphyxial death or otherwise cause or contribute to the decedent's cardiac arrest and death;

3. The use of pepper spray on the decedent did not cause or contribute to his cardiac arrest and death;

4. The decedent had an enlarged heart that placed him at significant risk of going into sudden cardiac arrest and death; and

5. The decedent was in a state of cocaine-induced "excited delirium," and that state, combined with the elevated potassium levels he suffered as a result of his use of cocaine and his underlying cardiac abnormalities, was the probable cause of his cardiac arrest and death. (*See id.* at pp. 5-15.)

**B. Charles Wetli, M.D.**

Dr. Wetli is a forensic pathologist based in New Jersey. Similar to Dr. Vilke, Dr. Wetli is expected to testify that the cause of the decedent's death was cocaine-induced "excited delirium." (*See* Exhibit 2 to Dunn Decl., Rule 26 Report of Charles Wetli, M.D. ["Wetli Rule 26 Report"], at pp. 2-3.) Dr. Wetli is also expected to testify that the actions of the individual Defendants, including the application of baton strikes, pepper spray, and the Taser, did not cause or contribute to the decedent's death. (*Id.* at p. 3.)

**C. Richard Clark, M.D.**

Dr. Clark is an emergency physician and professor of emergency medicine. Like Drs. Vilke and Wetli, Dr. Clark is expected to testify that the decedent was in a state of "excited delirium" and/or cocaine intoxication during the incident, and that this state contributed to his elevated potassium levels and other chemical imbalances and his death. (*See* Exhibit 3 to Dunn Decl., Rule 26 Report of Richard Clark, M.D. ["Clark Rule 26 Report"], at pp 3-5, ¶¶ 8-12.)

**D. Theodore Chan, M.D.**

Dr. Chan is an emergency physician at University of California San Diego ("UCSD") Medical Center and a professor of emergency medicine. Dr. Chan is expected to testify that the decedent's death was not caused by positional, restraint, or compression asphyxiation resulting from the manner in which he was restrained during the subject incident. (*See* Exhibit 4 to Dunn Decl., Rule 26 Report of

Theodore Chan, M.D. [“Chan Rule 26 Report], at p. 5.) Dr. Chan is also expected to testify that the use of pepper spray and a Taser on the decedent did not result in respiratory compromise or immediate cardiac arrest that led to the decedent’s death. (*Id.*)

## I. THE COURT SHOULD EXCLUDE OR LIMIT THE PROPOSED TESTIMONY OF DEFENDANTS’ MEDICAL EXPERTS BECAUSE IT IS UNNECESSARILY CUMULATIVE

The Court has discretion under to exclude evidence if the probative value of the evidence is “substantially outweighed by a danger of . . . unfair prejudice . . . or needlessly presenting cumulative evidence.” Fed. R. Evid. 403. This discretion extends to duplicative or otherwise cumulative expert testimony. *See United States v. Alisal Water Corp.*, 431 F.3d 643, 659-60 (9th Cir. 2005); *Davis v. Mason County*, 927 F.2d 1473, 1484 (9th Cir. 1991).

The Ninth Circuit has affirmed the exclusion of cumulative expert testimony. In *United States v. Alisal Water Corporation*, the defendants called an expert witness to provide testimony about the valuation of the defendants’ water systems. *See id.* at 660. The defendants then offered the report of another expert witness that challenged the valuation findings of an accountant appointed by the court. *See id.* at 659-60. The district court determined that the report was cumulative of the expert testimony that had already been received and refused to consider it in fashioning an appropriate civil penalty. *See id.* at 660. The Ninth Circuit affirmed the exclusion of the expert’s report because it was cumulative of other expert testimony and the defendants had failed to show how it was new or different from the evidence that been introduced at trial. *See id.*

In *Davis v. Mason County*, the district court limited the parties’ presentation of expert testimony in the area of police practices and procedures to two experts per side. *See* 927 F.2d at 1484. The defendant challenged the exclusion of its third

polices practices expert, who was expected to offer testimony on the "same topic" as one of other defense experts. *See id.* The Ninth Circuit affirmed the exclusion of the third expert, holding that the district had not abused its discretion in excluding the expert's testimony as cumulative. *Id.*

California district courts have similarly excluded or limited expert testimony that is duplicative, substantially overlapping, or is otherwise unnecessarily cumulative. *See, e.g.*, *Allen v. Hylands Inc.*, 2015 U.S. Dist. LEXIS 186799, at *3-4 (C.D. Cal. Aug. 20, 2015) (excluding expert testimony as cumulative because the experts opined on many of the same topics and relied on the same or very similar evidence for their opinions); *Brooks v. Munoz*, 2014 U.S. Dist. LEXIS 22992, at *2-4 (S.D. Cal. Feb. 24, 2014) (excluding the proposed testimony of four experts as cumulative because the testimony significantly overlapped with that of another expert); *Mankins v. United States*, 2013 U.S. Dist. LEXIS 131339, at *6-8 (C.D. Cal. Sept. 9, 2013) (limiting the plaintiff to two medical experts on the issues of causation and prognosis because the testimony from all five of the plaintiff's designated medical experts would be "needlessly cumulative" under Rule 403); *Engman v. City of Ontario*, 2011 U.S. Dist. LEXIS 66128, at *21 (C.D. Cal. June 20, 2011 (determining that expert testimony was cumulative where the opinions of the experts overlapped substantially); *see also Moniz v. City of Delano*, 2015 U.S. Dist. LEXIS 2136, at *20 (E.D. Cal. Jan. 8, 2015) (limiting the presentation of experts to testimony that does not duplicate the testimony of other experts).

In this case, there is a substantial and significant overlap between the opinions of the four medical experts that Defendants retained to opine on the cause of the decedent's death. Three separate experts are expected to testify that the decedent was in a state of cocaine-induced "excited delirium," and that this state caused or contributed to the decedent's death. (*See* Exhibit 1 to Dunn Decl., Vilke Rule 26 Report, at pp. 12-15; Exhibit 2 to Dunn Decl., Wetli Rule 26 Report, at pp. 2-3;

Exhibit 3 to Dunn Decl., Clark Rule 26 Report, at pp. 3-5, ¶¶ 8-12.) Three separate experts are also expected to testify that the use of pepper spray and a Taser on the decedent did not cause or contribute to the decedent's death. (*See* Exhibit 1 to Dunn Decl., Vilke Rule 26 Report, at pp-1-2, 7-11; Exhibit 2 to Dunn Decl., Wetli Rule 26 Report, at pp. 2-3; Exhibit 4 to Dunn Decl., Chan Rule 26 Report, at pp. 4-5.) Two separate experts will additionally testify that the restraint procedures utilized on the decedent did not result in any asphyxiation or cardiac arrest and were not a cause of or factor contributing to the decedent's death. (*See* Exhibit 1 to Dunn Decl., Vilke Rule 26 Report, at pp. 1-2, 9-10; Exhibit 4 to Dunn Decl., Chan Rule 26 Report, at pp. 3-5.)

This exactly the sort of overlapping and duplicative testimony that the Ninth Circuit and California district courts have excluded as needlessly cumulative under Rule 403. *See Alisal Water Corp.*, 431 F.3d at 659-60; *Davis*, 927 F.2d at 1484; *Allen*, 2015 U.S. Dist. LEXIS 186799, at *3-4; *Brooks*, 2014 U.S. Dist. LEXIS 22992, at *2-4; *Mankins*, 2013 U.S. Dist. LEXIS 131339, at *6-8. This Court should therefore limit expert testimony concerning: (1) cocaine-induced "excited delirium" as a cause of and/or factor contributing to death; (2) the use of pepper spray as a cause of and/or factor contributing to death; (3) the use of a Taser as a cause of and/or factor contributing to death; and (4) the restraint process and the restraint procedures utilized therein as a cause of and/or factor contributing to death such that each of those topics is addressed by only one expert.

## II. **CONCLUSION**

For all of the foregoing reasons, Plaintiffs respectfully request that the Court grant this Motion in its entirety.

///

///

///

DATED: April 3, 2017

Respectfully submitted,

**THE COCHRAN FIRM CALIFORNIA**

By: /s/ Brian T. Dunn
BRIAN T. DUNN
MEGAN R. GYONGYOS
Attorneys for Plaintiff WILLIAM MEARS