**MICHAEL N. FEUER,** City Attorney (SBN 111529x)
**THOMAS H. PETERS,** Chief Assistant City Attorney
**CORY M. BRENTE,** Supervising Assistant City Attorney
**J. EDWIN RATHBUN,** Deputy City Attorney
**CHRISTIAN BOJORQUEZ**, Deputy City Attorney
**ELIZABETH A. MITCHELL**, Deputy City Attorney (SBN 251139)
200 N. Main Street, 6th Floor, City Hall East
Los Angeles, CA 90012
Email: Elizabeth.Mitchell@lacity.org
Tel: (213) 978-6900 Fax: (213) 978-8785

Attorneys for Defendants CITY OF LOS ANGELES, STEVEN BEUMER, JONATHAN GAN, JOSE A. PEDROZA and JOHN SEFFEL

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| WILLIAM MEARS, individually and as Successor in Interest to Michael Mears; and JOANNA WYSOCKI, individually and as successor in interest to Michael Mears,<br>Plaintiffs,<br>vs.<br>CITY OF LOS ANGELES, et al.,<br>Defendants. | **Case No.: CV 15-08441 JAK (AJWx)**<br>(Consolidated with Case No. **LA CV15-09587 JAK (AJWx)**)<br>Honorable Judge: John A. Kronstadt<br>Honorable Magistrate Judge: Andrew J. Wistrich<br><br>**DEFENDANTS CITY OF LOS ANGELES, ET AL.'S REPLY IN SUPPORT OF THEIR MOTION FOR JUDGMENT AS A MATTER OF LAW AND/OR MOTION FOR NEW TRIAL**<br><br>**Date: March 5, 2018**<br>**Time: 8:30 a.m.**<br>**Crtm: 10 B** |

Defendants CITY OF LOS ANGELES, STEVEN BEUMER, JONATHAN GAN, JOSE A. PEDROZA and JOHN SEFFEL hereby submit the following Memorandum of Points and Authorities in reply to Plaintiff's Opposition to Defendants' Motion for Judgment as a Matter of Law and/or Motion for New Trial:

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

In their moving papers, Defendants presented essentially three separate but interrelated arguments, applicable to different aspects of the case.[1] To address Plaintiffs' confusion of the issues, Defendants have restated the arguments herein, as applied to the separate questions presented to the jury. First (applicable to the Excessive Force/Battery verdict only) Plaintiffs' case failed as a matter of law because they failed to prove the Taser affected Mr. Mears or even that the Taser alone could have caused his death; the only evidence thereof were two documents erroneously admitted into evidence which lacked foundation, contained multiple hearsay statements, and ultimately significantly prejudiced defendants' case. Second, (applicable to both Plaintiffs' excessive force/battery and negligence theories), the officers' use of force was reasonable and at a minimum entitles Defendant Gan to qualified immunity on the §1983 claim. Third, as to both Plaintiffs' Excessive Force/Battery and Negligence theories, Plaintiffs failed to prove that Mr. Mears would not have passed away but for the officers' actions.

## II. EITHER EACH CAUSE OF ACTION STANDS ON ITS OWN, OR A NEW TRIAL IS REQUIRED

The jury returned a verdict against only the Taser-operator for excessive force/battery, yet Plaintiff failed to prove the Taser alone could and did cause Mr. Mears' death. Plaintiffs contend Defendants' "taser only" argument is inapplicable because the jury also found liability against all four officer actors for Question 4 (negligence). *See* Plaintiff's Opposition (hereinafter "Opp") 4:5-17, 8:7-9:20. However, the theories underlying each verdict were allegedly separate (Questions 1 and 2 relevant

---

[1] Plaintiffs proceeded on three theories of liability: § 1983 (Excessive Force), battery/wrongful death, and negligence/wrongful death. The parties agreed that the standard for the §1983 and battery claims were identical and therefore submitted to the jury together (Questions 1 and 2 of the verdict form). The question of negligence was submitted to the jury separately (Questions 3 and 4 of the verdict form). The jury returned a verdict against ONLY Defendant Gan (Taser-operator) as to the excessive force and battery question. The jury returned a verdict against Defendants Gan, Beumer, Pedroza, and Seffel on the negligence question. (*See* Docket No. 126)

to the excessive force/battery causes of action and Questions 3 and 4 applicable to the negligence claim). Yet a different verdict under the negligence cause of action does not necessarily invalidate their verdict as to the 1983/battery question. A negligent wrongful death allegation in state law is much broader than a fourth amendment/battery analysis insofar as it may consider pre-deadly-force tactics in its "totality of the circumstances" analysis. *Hayes v. County of San Diego*, 57 Cal. 4th 622, 639 (2013)("[S]tate negligence law, which considers the totality of the circumstances surrounding any use of deadly force, is broader than federal Fourth Amendment law, which tends to focus more narrowly on the moment when deadly force is used.").

It is important to note, however, the *Hayes* court was careful to discuss pre-force tactical considerations only in the context of deadly force, and no court has since addressed the issue. *See e.g. Mulligan v. Nichols*, 835 F.3d 938, 991 n.7 (9th Cir. 2016)("The California Supreme Court did not address whether decisions before non-deadly force can be actionable negligence, but addressed this issue only in the context of "deadly force."). A Taser is not considered deadly force (*Bryan v. MacPherson*, 630 F.3d 805 (9th Cir. 2010)), nor is any other type of force that was used in this case. Thus, to the extent pre-force tactics cannot be considered in a non-deadly force scenario, Plaintiffs' "negligent use of force" cause of action would mirror their excessive force/battery cause of action because pre-*Hayes*, California courts judged all claims of negligent use of force by the same standards as they would use to evaluate whether there was a Fourth Amendment violation. *Hernandez v. City of Pomona*, 46 Cal. 4th 501, 511-14 (2009); *David v. City of Fremont*, *supra*, 2006 U.S. Dist. LEXIS at *63 (citing *Munoz v. City of Union City*, 120 Cal. App. 4th 1077, 1102-06 (2004)). To the extent *Hayes* is only applicable in deadly force situations, a non-deadly force negligence cause of action would still be evaluated in an identical manner as a fourth amendment cause of action. When viewed from this perspective, the verdict returned by the jury is clearly inconsistent and a new trial must be granted. *See, e.g. Flores v. City of Westminster*, 873 F.3d 739, 756-57 (9th Cir., October 11 2017)(noting that "Courts have a duty under the

Seventh Amendment to harmonize a jury's special verdict answers" but a new trial should be granted "in the case of fatal inconsistency.")(internal citations omitted).

If the Court adopts the Plaintiffs' apparent analysis – that a finding against all four (4) officers under their negligence theory is identical to a finding of liability under their 1983/battery theory – a new trial is required. Alternatively, if the negligence theory encompasses a broader spectrum of analysis than a Fourth Amendment/Battery theory, the excessive force/battery verdict must be taken on its own merit (which was only against the Taser operator). Given that no court has stretched the *Hayes* decision to permit pre-force tactics to be considered in a negligence analysis in non-deadly force situations, Defendants would urge the Court to adopt the former and grant a new trial.

## III. APPLICABLE LEGAL STANDARD

Plaintiffs appear to forget that this motion is brought under Rule 59 in addition to 50 when they contend "[t]he Court does not assess a witnesses [sic] credibility on a post-verdict motion." (Opp 12:25-26). In fact, that's exactly what the Court is required to do in evaluating a motion for new trial. *Landes Const. Co, Inc. v. Royal Bank of Canada*, 833 F 2d 1365, 1371 (9th Cir. 1987)(In ruling on a motion for new trial, the Court may weigh evidence and there is no need to view the evidence in the light most favorable to the verdict.); *see also Molski v. M.J. Cable, Inc*., 481 F.3d 724, 729 (9th Cir. 2007) ([T]he district court has 'the duty… to weigh the evidence as [the court] saw it, and to set aside the verdict of the jury, even though supported by substantial evidence, where, in [the court's] conscientious opinion, the verdict is contrary to the clear weight of the evidence.")(citations omitted). Each case cited by Plaintiff in this regard relates only to Rule 50 motions, not Rule 59 motions. Should the Court find there was *some* evidence to support Plaintiffs' position, but the weight of the evidence is contrary thereto, the Court has the duty to set aside the verdict and grant Defendants a new trial. *Id.*

## IV. PLAINTIFFS FAILED TO PROVE DEFENDANT GAN'S USE OF THE TASER CAUSED MR. MEARS' DEATH

To prove their excessive force case against Defendant Gan, Plaintiffs were required to prove that 1) Gan used force on Plaintiff and 2) that force caused Mr. Mears' death. Plaintiffs proved neither.

**a. <u>There Was Insufficient Evidence that the Taser Affected Mr. Mears</u>**

There is no dispute that officers saw the Taser barbs attached to Mr. Mears' clothing, but not in his skin. This is consistent with the lack of puncture wounds to Mr. Mears' body. Regardless of whether the barbs touched him, the Taser could "potentially" still function properly if they were collectively within 2 inches of his body (Hall 118:22-119:10); the undisputed evidence is that Mr. Mears was thrashing and moving around, making it reasonably likely that the barbs in his shirt were consistently moving away from his body. Dr. Hiserodt, Plaintiff's own expert, admitted that whenever a person is Tased, one should see either puncture wounds (if the barbs entered the body) or burn marks from the electrical activity (if the Taser barbs did not puncture the skin, but the electricity "jumped the gap" and reached the body); <u>no such marks were found</u> (Declaration of Elizabeth Mitchell, hereinafter "Mitchell Decl.", Exhibit 1, Testimony of Dr. Hiserodt 68:2-19). This is clear, indisputable physical evidence that the Taser's electricity never actually made contact with Mr. Mears' body.

Plaintiffs' evidence in support of their position comes down to, essentially, that Mr. Mears periodically ceased his bizarre activity between various Taser applications (though unclear if related thereto), and at some point Officer Seffel perceived neuromuscular incapacitation but was "not sure" if it was having an effect.[2] All other

---

[2] The totality of the evidence presented to support Plaintiff's case that the Taser actually affected Mr. Mears is the following:

Officer Gan testified that Mr. Mears' ceased his activity <u>after</u> the first Tasing Cycle (Mitchell Decl., Exhibit 2, Gan Testimony (hereinafter "Gan") 24:24-25:3) but during the first cycle itself, Gan's behavior did not change: "He continuously to violently roll [sic] left and right, kicking and flailing his arms and yelling at the top of his lungs as well." (Gan 65:5-11). Mr. Mears continued to roll around and didn't react to the second Tasing cycle at all (Gan 30:14-25; 66:5-10). Mr. Mears' behavior never changed from the time of the first Taser cycle through the last (Gan 69:10-19). There was another momentary lapse in movement after the third Taser cycle, but Mr. Mears continued to move about (Gan 86:12-

evidence presented showed that the Taser had zero effect on Mr. Mears and the physical evidence (i.e. lack of burn marks where the electricity would have touched the skin) supports that. These vague references are insufficient to support a finding that the electricity from the Taser reached and actually affected Mr. Mears. Should the Court find that there was sufficient evidence that could cause a reasonable person to conclude Mr. Mears did in fact receive the electricity on his body and reacted accordingly, Defendants would still urge the Court to use its independent discretion and evaluate the evidence as The Court saw it. The great weight of the evidence clearly demonstrated that the Taser had no effect on Mr. Mears at all, if it even touched him.

**b. There Was Insufficient Evidence the Taser Caused Mr. Mears' Death**

Even if Plaintiffs did prove that the Taser affected Mr. Mears, they wholly failed to prove that the Taser – in and of itself – could and actually did cause Mr. Mears' death as found by the Jury in Questions 1 and 2. Dr. Hiserodt was Plaintiffs' sole "causation" witness and he opined only that the totality of the force used by the officers (bodyweight, struggles, batons, etc.) caused Mr. Mears' death by altering his blood chemistry. Plaintiffs emphasized this point repeatedly in their opposition. (Opp 10:15-12:13). At no point did Dr. Hiserodt (or anyone else) ever opine that the Taser alone could have or did cause Mr. Mears' death. The only evidence before the jury that supported a finding that the Taser could and did on its own cause death were the Taser Warning and Autopsy Report, discussed in section IV(c) *infra*.

---

18). Regardless of the momentary cessation of Mr. Mears' actions, he never believed the Taser was working (Gan 87:2-8).

Officer Seffel testified Mr. Mears "went down" and was "trying to get up" when he was Tased the first time (Mitchell Decl., Exhibit 3, Seffel Testimony, hereinafter "Seffel", 94:4-12). Seffel had the perception that the Taser was "interrupting [Mr. Mears'] neuromuscular activity."(Seffel 104:15-19; 105:22-106:12). Seffel was "not sure" if at any point in time the Taser was having any effect on Mr. Mears. (Seffel 108:13-18). He thought it had "some degree of effect" with the neuromuscular incapacitation but that was it. (Seffel 108:23-109:5).

**c. Evidentiary Errors Were Made Prejudicing Defendants by Providing the Causal Link Between the Taser and Death**

Both the Taser Warning (Exhibit 48) and the Autopsy Report (Exhibit 119) were admitted without foundation, without hearsay exception, with limited relevance, and were extraordinarily prejudicial to Defendants' case.

Plaintiffs' attempt to use the testimony of Sergeant Hall to establish foundation for Exhibit 48 is nonsensical: he in fact testified he had never seen the 2013 Taser Warning document prior to testifying that day (Mitchell Declaration, Exhibit 4, Michael Hall testimony, hereinafter "Hall" 125:12-21). Roger Clark testified that he "recognized" Exhibit 48 but otherwise laid no further foundation therefor (where it came from, what it is, who authored it, etc.). Importantly, he could not and did not testify that it was distributed to Los Angeles Police Department in particular. There was zero testimony that anyone from LAPD had the document, had seen the document, should have seen the document, or that officers should have been trained on the contents of the document. General testimony was given by Mr. Clark regarding expected training of officers, but none of it related to Exhibit 48 in particular. No testimony was provided affirming that the document was what it purported to be. Multiple hearsay statements were contained within the document, including detailed warnings against cumulative/prolonged use which could cause death or serious injury. The same is said for the autopsy report, albeit in a more limited sense: there was no declaration by a custodian of records establishing the proper foundation and permitting it to be admitted under the hearsay rules. Without being able to cross-examine the declarant (i.e. coroner), the confusing terminology contained within the report (that police restraint with use of taser was listed as a condition "contributing but not related to the immediate cause of death"), in combination with the Taser Warning, was irreparably injurious to Defendants' case. As the party with the burden of proof both for their case and as the party championing the document[3] it

[3] Defendants were mistaken in their moving papers regarding who moved the autopsy report into evidence: Plaintiffs originally so-requested and Defendants thereafter agreed. (Hiserodt 32:12-18)

was Plaintiff's obligation to call the coroner to lay the foundation for the autopsy report; they failed to do so.

Quite contrary to Plaintiffs' representations in their opposition papers, the information contained in these two documents was never was given to the jury in a substantive manner other than in the documents themselves. True, Dr. Hiserodt revealed the findings in the autopsy report during his testimony but that information, taken from outside evidence, was presented to the jury only as a basis for an expert's opinion but is not itself evidence and cannot be (and was not) admitted for the truth of the matter under Fed. R. Evid. 703. *Paddack v. Dave Christensen, Inc.*, 745 F.2d 1254 (9th Cir. 1984)("Rule 703 merely permits such hearsay, or other inadmissible evidence, upon which an expert properly relies, to be admitted to explain the basis of the expert's opinion…It does not allow the admission of the reports to establish the truth of what they assert.")(internal citation omitted); *See also United States v. Sims*, 514 F.2d 147 (9th Cir. 1975), *cert. denied*, 423 U.S. 845, 46 L. Ed. 2d 67, 96 S. Ct. 83 (1975)("Upon admission of such evidence, it then, of course, becomes necessary for the court to instruct the jury that the hearsay evidence is to be considered solely as a basis for the expert opinion and not as substantive evidence."). The court admonished the jury several times in this regard. (*See, e.g.*, Mitchell Decl., Exhibit 4, Testimony of Roger Clark, hereainfter "Clark" 9:7-13, 27:14-16).

The same is true for Roger Clark's reference to the Taser causing serious injury or death "as described in the warnings" (Clark 23:10-12). Such a reference would not be admissible for the truth of the matter under Fed. R. Evid. 703 and *Paddack*, *supra*; moreover, Roger Clark, testifying as a police practices expert, would not be qualified to discuss cause of death or other medical or scientific conclusions because it would lack foundation. *See, e.g. Richman v. Sheahan*, 415 F. Supp. 2d 929 (N.D. Ill 2006)(police practices expert precluded from opining on information surrounding a detainee's cause of death or other scientific issues). In fact, Plaintiffs attempted many times to introduce the evidence contained in Exhibit 48 through Roger Clark and Sgt. Hall but failed to do

so because both experts lacked sufficient foundation to discuss it. Plaintiffs' argument that the information contained therein "would have" come in anyway is inapposite. The information did not come in, nor "would it have" if the document was not introduced.[4]

The Court ultimately determined Exhibit 48 was relevant to Plaintiffs' *Monell* claims (the relevancy being significantly disputed by Defendants given the lack of testimony thereon); however, in light of the significant prejudice to Defendants' case, the Court should have curbed the prejudicial effect by bifurcating the issues (which was requested by Defendants and still could have easily been done at that point) or including a limiting instruction with the document. None of this was done.

The bottom line is this: The Court made an error in permitting Exhibits 48 and 119[5] into evidence, particularly without a limiting instruction. That error was inherently prejudicial to Defendants because it provided the only evidence that a Taser could and did lead to Mr. Mears' death. Defendants request this Court find, as a matter of law, that without the erroneously provided exhibit(s), there was insufficient evidence that the Taser alone could have and did cause Mr. Mears' death. Because the jury made a specific finding that only the Taser operator (who used no other force) used excessive force causing Mr. Mears' death, that verdict must be invalidated as a matter of law.

---

[4] Final evidentiary discussions did not occur until after the close of evidence, and after closing arguments. Plaintiffs had no way of knowing whether these documents were coming in and therefore any information therein which they wished to introduce into evidence and was actually admissible was already elicited. Plaintiffs repeatedly argue the information "would have come in" anyway, but the fact is that it didn't. Without these documents, no information contained therein was given to the jury in a substantive manner (i.e. for the truth of the matter asserted).

[5] Though Defendants readily admit that Exhibit 48 had less foundation, less relevance, more hearsay, and was more prejudicial to Defendants' case, Defendants still contend that the admission of Exhibit 119 in conjunction with Exhibit 48, and over Defendants' ultimate objection, was improper. True, Defendants initially stipulated to Exhibit 119 being introduced into evidence, but that does not mean the stipulation could not later be withdrawn. Plaintiffs do not argue that they relied on the admission of Exhibit 119 during the trial or failed to elicit vital information that would otherwise have been elicited but for its admission.

Defendants request the Court enter judgment in Officer Gan and the City of Los Angeles' favor on this issue. At an absolute minimum, Defendants are entitled to a new trial without the evidentiary errors described above.

## V. THE USE OF FORCE WAS REASONABLE, OR AT A MINIMUM DEFENDANT GAN SHOULD BE ENTITLED TO QUALIFIED IMMUNITY

As noted previously, the underlying facts of the incident are not in dispute. Without recounting the totality of the factual scenario, in sum the officers found a man screaming, sweating, rolling around in glass, covered in blood, and totally unintelligible and nonresponsive. Firefighters were not able to approach him due to his violent nature, nor were the initial responding officers, and therefore additional resources and force was needed to try to subdue him to provide medical care. The facts are nearly identical to *Goldsmith v. Snohomish County*, 558 F. Supp.2d 1140, 1150-51 (W.D. Wash. 2008) in which the Court found "the escalating use of force was proportionate to and required by the situation facing the deputies" where the man assaulted paramedics, was covered in blood, incoherent, sweaty, and violent causing deputies to use punches, O.C. spray, hobble, bodyweight, and Taser to ultimately attempt to subdue him. At no point did the evidence indicate Mr. Mears stopped struggling or resisting during the use of force; instead the officers used only that force which appeared reasonably necessary at the time to attempt to get him into custody. Nor did Mr. Mears definitely appear mentally ill versus under the influence of narcotics (cocaine in fact being found in Mr. Mears' blood afterwards). When the facts are not in dispute, it is the Court's obligation to make a determination about the reasonableness of the use of force as a matter of law. Fed. R. Civ. Pro 50. Alternatively, Defendant Gan is entitled to qualified immunity; no case has ever found a per se limit to the number of times or seconds a Taser should be activated, especially where there was no evidence that the Taser was effective.[6]

[6] Plaintiff argues that Defendants "belatedly" seek qualified immunity and the Court should not overturn the jury's verdict on this basis. Plaintiff ignores that this motion, by agreement of all counsel and the Court, also encompasses a Rule 50(a) motion; therefore Defendants are seeking qualified immunity at exact the appropriate time.

## VI. PLAINTIFFS FAILED TO PROVE MR. MEARS WOULD BE ALIVE BUT FOR OFFICERS' ACTIONS

Every expert who testified regarding the "causation" issue was in agreement of the following facts: 1)Mr. Mears had cocaine in his system which is known to cause excited delirium, 2)excited delirium can manifest itself in a person being agitated, excited, aggressive, resistant to painful stimuli, nonresponsive to commands, talking incoherently, and bizarre behavior, all of which Mr. Mears exhibited, and 3) excited delirium can cause the same blood chemistry changes we saw in Mr. Mears which ultimately lead to his death. (Hiserodt 44:6-47:19). All experts agreed that Mr. Mears died as a result of the chemical imbalance in his blood. Dr. Hiserodt provided no foundation or explanation for his opinion that without the officers' actions Mr. Mears would not have perished and never even attempted to explain his opinion in light of his agreement of the above facts. It should not be considered and Defendants submit they are entitled at a minimum to a new trial on this issue.

## VII. CONCLUSION

The jury returned a verdict on the excessive force/battery cause of action against the Taser operator only; the only evidence provided to them to support such a finding were two documents which should never have been admitted. Moreover, Defendants would submit the overall use of force was reasonable under the circumstances and in any case Plaintiffs failed to prove that Mr. Mears would not have died but for the officers' actions. For all of these reasons, Defendants request the Court grant Judgment as a Matter of Law in their favor, or alternatively a new trial.

Dated: March 19, 2018

MICHAEL N. FEUER, City Attorney

By: /S/ *Elizabeth A. Mitchell*

ELIZABETH A. MITCHELL, Deputy City Attorney
Attorneys for Defendants Attorney for Defendants CITY OF LOS ANGELES, STEVEN BEUMER, JONATHAN GAN, JOSE A. PEDROZA and JOHN SEFFEL